**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| JUSTIN ANDREW BRUNTJEN, ESQ., | Court File No. 20-CV-01832-MJD-KMM |
| Plaintiff, | **DEFENDANTS CUTLER'S AND TIPPIN & ASSOCIATES' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL DISMISSAL OF COMPLAINT PURSUANT TO RULE 12(b)(2) OR, ALTERNATIVELY, RULE 12(b)(6).** |
| v. | |
| RAFFLES VAN EXEL, et al., | |
| Defendants. | |

---

## INTRODUCTION

As stated in previous filings in this matter, the recording artist Prince died in 2016, and his estate has been pending in litigation in Minnesota since that time. Alfred Jackson is a recognized heir of the Prince estate. In his Memorandum in Opposition to Defendants' Motion to Dismiss *(ECF No. 30)*, Plaintiff attempts to convince this Court that it has personal jurisdiction over Defendants Keith Cutler and James W. Tippin & Associates ("the Tippin Defendants") in this matter. The underlying premise of Plaintiff's position, in essence, is that anyone who came into contact with or had any connection with Alfred Jackson since 2016 has thereby established sufficient minimum contacts with the State of Minnesota for jurisdiction purposes, because Alfred Jackson is an heir to the Prince estate and the estate litigation is still pending in Minnesota. Not only is this position untenable on its face, it is wholly unsupported by the facts and the law.

## CONSIDERATIONS FOR THE COURT

As the Court takes up the Motion to Dismiss filed by the Tippin Defendants, there are some considerations and factors of which the Court should be aware and remain cognizant. While a number of issues are being raised to the Court, it is hoped that the Court will keep the following matters in mind.

### *The Prince Estate*

Plaintiff Justin Brunjen, a lawyer, repeatedly emphasizes his tangential involvement with the Prince estate. In his 28-page Memorandum in Opposition (ECF No. 30), Plaintiff mentions or refers to "Prince" over 50 times. In an interview he gave earlier this year, Plaintiff stated:

> The thing that I am proudest of in my career is working with the Prince estate and family in determining his rightful heirs. Also, the entertainment deals involving Prince that I was able to participate in, help craft and get approved by the court.

*(Q&A with Alumnus Justin Bruntjen, from University of St. Thomas online newsletter, attached hereto as Exhibit 1 and incorporated herein by reference.)* If touting his connection to the Prince estate is how Plaintiff has chosen to bolster his legal career, that is certainly his prerogative. The Tippin Defendants' Motion to Dismiss, however, has nothing to do with the Prince estate.

***A Simple Loan***

The genesis of the dispute out of which the Tippin Defendants' Motion to Dismiss arises was a loan—a simple loan. Plaintiff arranged for Alfred Jackson to obtain a loan. The proceeds of the loan were to be paid to Alfred Jackson, through Plaintiff, in three installments. When Alfred Jackson did not receive the third installment from Plaintiff, questions were raised. When those questions were not answered and evidence of the final proceeds not produced, a lawsuit was filed against Plaintiff. Alfred Jackson was a resident of Missouri, and the lawsuit was filed in federal court in Missouri.

Alfred Jackson's Complaint against Plaintiff was not filed in Minnesota and did not allege a violation of Minnesota law. The loan was not made in Minnesota. Alfred Jackson was not a resident of Minnesota. The lender was not located in Minnesota. The proceeds of the loan payment were to be deposited in a bank that was not located in Minnesota. The only "connection" to the Prince estate is that Alfred Jackson was to repay the loan from his inheritance from the estate.

Under Plaintiff's everything-ties-back-to-the-Prince-estate rationale, the fact that Alfred Jackson was going to eventually repay the loan from his inheritance somehow establishes sufficient minimum contacts to subject the loan, the litigants in the Missouri action, and Missouri local counsel, to the jurisdiction of Minnesota courts. This defies all logic and lacks any support in fact or law.

The claims alleged against the Tippin Defendants all relate to allegations contained in the Complaint filed in the Missouri lawsuit. The Tippin Defendants are not parties to the Prince estate litigation, do not represent any interests in the estate litigation, and have

no connection whatsoever to the estate litigation. The full extent of the Tippin Defendants' involvement in anything relating to Plaintiff is serving as local counsel in the Missouri lawsuit that was filed to recover loan proceeds from Plaintiff.

***Allegations Against the Tippin Defendants Are Different from Those Against the WWB Defendants***

The Tippin Defendants filed a Motion to Dismiss (ECF No. 9) and Memorandum in Support (ECF No. 11), and the WWB Defendants filed their own Motion and accompanying Memorandum (ECF Nos. 19 & 21). While Plaintiff has elected to respond to both Motions to Dismiss in one Memorandum in Opposition (ECF No. 30), the Tippin Defendants and the WWB Defendants have their own separate Motions to Dismiss, with separate and distinct grounds. Some allegations asserted against the WWB Defendants, however, are not applicable to the Tippin Defendants. Accordingly, some arguments contained in Plaintiff's Memorandum in Opposition do not apply to the Tippin Defendants. The only three counts in Plaintiff's Complaint applicable to the Tippin Defendants are Counts 3, 8 & 9. It is those three Counts to which the Tippin Defendants' Motion to Dismiss is directed. To the extent Plaintiff's Memorandum in Opposition raises arguments or legal principles not applicable to Counts 3, 8 or 9 of the Complaint, those arguments and legal principles have no bearing on the Tippin Defendants' Motion to Dismiss.

## <u>ARGUMENT</u>

### I. <u>Motion to Dismiss for Lack of Jurisdiction</u>

Plaintiff fails to overcome three major legal hurdles, which prevent Plaintiff from establishing that this Court has personal jurisdiction over the Tippin Defendants. Because Plaintiff cannot establish personal jurisdiction, the Tippin Defendants' Motion to Dismiss should be granted for lack of personal jurisdiction in accordance with Federal Rule of Civil Procedure 12(b)(2).

#### *It is* <u>**Defendants'**</u> *Contacts that Determine Jurisdiction, not the Contacts of Others*

Plaintiff attempts to establish *Defendants'* minimum contacts with the State of Minnesota by establishing *other people's* contacts with Minnesota. At the bottom of page 14 of his Memorandum, Plaintiff states: "The Tippin Defendants took upon the representation of Alfred who was involved in a Minnesota state court action that reached international exposure." In other words, Plaintiff argues that because the Tippin Defendants served as local counsel for Alfred Jackson in a ***Missouri*** lawsuit, the Tippin Defendants are now subject to jurisdiction in Minnesota because Alfred Jackson was a party to a separate, unrelated ***Minnesota*** state court action, even though the Tippin Defendants were not involved in any way whatsoever in the Minnesota state court action. The flaw in that argument is painfully apparent.

It is well-settled law that it is a defendant's own contacts which determine whether the defendant is subject to a state's jurisdiction. *E.g.*, *Lawhead v. Law Offices of Joseph Martin Carasso*, Civil No. 20-520 (JRT/DTS), 2020 WL 5106817 (D. Minn. Aug. 31, 2020). Not only have this Court and the Eighth Circuit as a whole been clear on this point, the United States Supreme Court has also weighed in on the lack of probative value of the contacts of other parties in establishing the *defendant's* contacts. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 577 U.S. 277, 286 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)).

Therefore, simply representing someone in Missouri who happens to be involved in litigation in another state does not subject the Missouri attorney to that other state's jurisdiction. Being local counsel for an attorney who happens to represent the common client in litigation in another state does not subject that local counsel to the jurisdiction of that other state. Under clear Supreme Court precedent, specific jurisdiction over a claim arises from, "principally, an activity or an occurrence *that takes place in the forum state*." *Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 137 S. Ct. at 1781 (2017) (emphasis added). Plaintiff's outlandish assertion that Alfred Jackson's connection to the Prince litigation "is the bond that connects the entire group to Minnesota" is both factually and legally incorrect. Jurisdiction must be based on the defendant's *own* contacts with the forum state, not on random associations or interactions with others. *Id.*

Plaintiff's attempt to fashion *some* connection to Minnesota on the part of the Tippin Defendants reaches an unanticipated level of desperation when he suggests that the Tippin Defendants had submitted to this Court's jurisdiction by seeking admission *pro hac vice* for the purpose of contesting jurisdiction in this very case.[1] (Pl.'s Mem. in Opp'n at 18.) This is contrary to Federal Rules of Civil Procedure 12(b) and 12(h), and to prior rulings of this Court. *See Murphy v. Labor Source, LLC*, No. 19-cv-1929 (MJD/ECW), 2020 WL 3633234 (D. Minn., March 12, 2020). This argument lacks any merit and should be disregarded.

Plaintiff goes so far as to argue that jurisdiction exists now based on his own supposition of what the Tippin Defendants *might* have had to do sometime in the future if the Missouri lawsuit had not been dismissed. Plaintiff contends that Defendants at some point would have had to "retain and contract with individuals in Minnesota" in connection with the Missouri litigation. (Pl.'s Mem. in Opp'n at 16.) Even if Plaintiff's prognostications were a basis for this Court to exercise jurisdiction (which they are not), there was no requirement in the now-dismissed Missouri litigation that Defendants, as legal counsel in that case, had to ultimately retain and/or contract with a Minnesota resident in order to prosecute that case. But even if Defendants would have had to retain and contract with individuals in Minnesota to prosecute the Missouri case, that still would not have

[1] Plaintiff's remark on page 18 of his Memorandum that Defendants had "vocalized their disdain for Minnesota presence" is simply not true. Defendants in no way harbor, nor have ever voiced or expressed, any disdain for the State of Minnesota or its courts.

provided sufficient minimum contacts under Minnesota law for this Court to exercise personal jurisdiction over Defendants in this case.

In *Lawhead v. Law Offices of Joseph Martin Carasso & Joseph Martin Carasso*, *supra*, the defendant New York law firm had contact on several occasions with Minnesota individuals via telephone, e-mail, regular mail, and had even done business with a Minnesota funeral home following the death of its New York-resident, but Minnesota-born client. This Court held that "these contacts are normal incidents of representation and do not confer jurisdiction." *Lawhead*, 2020 WL 5106817 at *12; *see also Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987) (no jurisdiction over out-of-state law firm even though it had used a local courier service in the forum state). Even if Plaintiff's hypothetical had occurred (which it did not), merely utilizing services provided by a Minnesota resident as part of the normal litigation process in the Missouri case would have been insufficient to establish the minimum necessary contacts to confer jurisdiction on the Tippin Defendants.

In an astonishing attempt at pseudo-clairvoyance, Plaintiff further states that the Tippin Defendants "unquestionably knew that they would eventually purposefully avail themselves of the privilege of conducting business in Minnesota" and that they "would have needed to take the deposition of Plaintiff in Minnesota." (Pl.'s Mem. in Opp'n at 16.) Speculation about counsel's potential litigation strategy and conjecture about what might have happened in a Missouri lawsuit cannot form the basis for this Court to exercise personal jurisdiction in Minnesota. Such specious and illusory nexuses should not even be considered by this Court.

***Mere Effects are Insufficient to Confer Jurisdiction***

The second legal hurdle which Plaintiff fails to overcome is the fact that the effect that the filing of the Missouri lawsuit supposedly had on Plaintiff is insufficient to establish this Court's jurisdiction over the Tippin Defendants. The specific actions alleged against the Tippin Defendants are that they included false allegations in a pleading filed in a Missouri lawsuit in 2019, and that "the damage and intent were to effect [sic] Plaintiff's ability to practice law . . . and seek damages from a Minnesota resident." (Pl.'s Mem. in Opp'n at 15.) The purpose of the Missouri filing was to recover unpaid loan proceeds, not to affect Plaintiff's ability to practice law. That notwithstanding , the (mis)perceived effect on Plaintiff is legally insufficient to establish this Court's jurisdiction over the Tippin Defendants. Based on an analysis of the *Calder* effects test and the controlling law, the Minnesota courts' position on this issue is very clear that mere effects in the forum state are insufficient to confer personal jurisdiction. *See Johnson v. Arden*, 614 F.3d 785 (8th Cir. 2010); *Wood v. Kapustin*, 992 F. Supp. 2d 942 (D. Minn. 2014); and *Jacobs Trading, LLC v. Ningbo Hicon Int'l Indus. Co., Ltd.*, 872 F. Supp. 2d 838 (D. Minn. 2012).

Less than three months ago, this Court again addressed this very issue, in the case of *A-1 National Fire, LLC v. Freedom Fire, LLC*, No. 20-cv-1706 (WMW/DTS), 2020 WL 5105793 (D. Minn., August 31, 2020). There, a fire protection system installation company with offices in Texas and Minnesota filed suit in Minnesota against a rival company with offices only in Texas, alleging tortious interference with contract. The Texas company (defendant) filed a motion to dismiss for lack of jurisdiction. In opposing the motion, the Minnesota company (plaintiff) argued that jurisdiction was proper in Minnesota because

"[defendant] knew [plaintiff] has ties to Minnesota and, therefore, knew that its alleged tortious acts could cause an impact here." *Id.*, 2020 WL 5105793 at *6.

This Court squarely and soundly rejected that argument and held that "a plaintiff's forum connections cannot be attributed to a defendant because that would impermissibly allow a plaintiff's contact with the defendant and the forum to drive the jurisdictional analysis." *Id*. The Court concluded its analysis by holding: "[plaintiff] has not presented facts that [defendant] uniquely or expressly targeted Minnesota. . . . Because 'mere effects in the forum state are insufficient to confer personal jurisdiction,' . . . [plaintiff] fails to establish that this Court has personal jurisdiction over [defendant] under an intentional-tort theory." *Id.* (quoting *Johnson*, 617 F.3d at 797).

In like fashion, Plaintiff here has failed to plead or present any facts to show that the Tippin Defendants uniquely or expressly targeted Minnesota by the filing of a Missouri lawsuit on behalf of a Missouri resident to recover loan proceeds payable in Missouri. An analysis of the facts and the law clearly shows that Plaintiff has failed to establish that this Court has personal jurisdiction over the Tippin Defendants.

***Alleged Conspiracy Does Not Provide Basis for Jurisdiction***

The third legal hurdle that Plaintiff fails to overcome is establishing the existence of a conspiracy sufficient to confer jurisdiction over Defendants. Plaintiff contends that the Tippin Defendants were part of a conspiracy to "be Alfred's counsel and to extort Plaintiff into paying money they knew or should have known was not owed to Alfred," and

that the object of this alleged conspiracy was to "get paid by Alfred's windfall from the Prince litigation and also the trustee for the Prince Estate." (Pl.'s Mem. in Opp'n at 19, 20.)

This argument is specious. First, neither of these conspiracy claims is asserted against the Tippin Defendants in the Complaint. (ECF No. 1) The only count in Plaintiff's Complaint alleging conspiracy against the Tippin Defendants is Count 8, "Civil Conspiracy to Defame," which lists the following as the only acts of the conspiracy alleged against the Tippin Defendants: "conspired together with the objective to defame Plaintiff . . . with false allegations that Plaintiff stole $500,000.00 from Alfred." The Complaint does not allege that these Defendants conspired to "be Alfred's counsel and to extort Plaintiff into paying money they knew or should have known was not owed to Alfred." The Complaint does not allege that these Defendants conspired to "get paid by Alfred's windfall from the Prince litigation and also the trustee for the Prince Estate." The sole allegation of "conspiracy" made against the Tippin Defendants is a conspiracy to "defame Plaintiff" by alleging in the Missouri lawsuit that he stole $500,000 from Alfred Jackson.

Inasmuch as Plaintiff's Complaint specifically limits the allegations of conspiracy by the Tippin Defendants to defamation in the Missouri lawsuit, this Court's jurisdictional analysis should likewise be limited to the specific acts alleged by Plaintiff—the filing of the Missouri lawsuit. From that vantage point, it can readily be seen that Plaintiff's argument—that the Tippin Defendants' participation in a conspiracy subjects them to personal jurisdiction in Minnesota—fails.

Plaintiff cites and relies on *Personalized Brokerage Services, LLC v. Lucius*, Civ. No. 05-1663, 2006 WL 208781 (D. Minn. Jan. 25, 2006), but that reliance is misplaced.

In that case, the District Court of Minnesota held that, in order to establish personal jurisdiction over a defendant based on a conspiracy theory, a plaintiff must establish "(1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Personalized Brokerage Services,* 2006 WL 208781, at *5 (quoting *Remmes v. Int'l Flavors & Fragrances*, *Inc.*, 389 F. Supp. 2d 1080 (N.D. Iowa 2005)). While Defendants dispute the presence in this case of any of those three criteria, the third criterion puts the proverbial nail in the coffin of Plaintiff's argument.

Bearing in mind that the only conspiracy alleged against the Tippin Defendants is with respect to the purportedly defamatory allegations in the Missouri lawsuit, jurisdiction could not have been conferred on these Defendants in this manner because none of the acts of this supposed "conspiracy" took place in Minnesota. The allegedly defamatory statements were filed in U.S. District Court in Missouri, not in Minnesota. The loan which was the subject of that Complaint was not made in Minnesota. Alfred Jackson was not a resident of Minnesota, and the lender was not located in Minnesota. The proceeds of the missing loan payment were to be deposited in a bank that was not located in Minnesota.

The counsel of record in that Missouri lawsuit were the two sets of Defendants in this case—the WWB Defendants, and the Tippin Defendants. The WWB Defendants had no office in Minnesota; they were based in and operated out of Texas. The Tippin Defendants had no office in Minnesota; they are based in and operate out of Missouri. The drafting of the Complaint containing the "defamatory" statements took place in Texas. The Complaint was filed in Missouri. To the extent the two law firms collaborated,

communicated, and prepared to file the Missouri lawsuit (which Plaintiff would call "conspiring"), all such collaboration, communication, and preparation occurred in Texas and Missouri, not in Minnesota. *Personalized Brokerage Services* is clear that, in order for jurisdiction to be conferred by participation in a conspiracy, there must be an overt act taken in furtherance of the conspiracy ***within the forum's boundaries***. 2006 WL 208781, at *5. That did not happen here. Every act forming the basis of the alleged conspiracy pleaded in Count 8 of Plaintiff's Complaint occurred outside of Minnesota. Therefore, participation in this alleged conspiracy did not, and legally cannot, confer this Court jurisdiction over the Tippin Defendants.

Plaintiff has failed to establish that the Tippin Defendants have minimum contacts with the State of Minnesota sufficient for this Court to exercise jurisdiction over them. Plaintiff's arguments lack support in both the facts and the law. Therefore, Defendants Keith Cutler's and James W. Tippin & Associates' Motion to Dismiss for Lack of Personal Jurisdiction should be granted, and the claims against them dismissed.

## II. Motion to Dismiss for Failure to State a Claim

### *Defamation Disguised as "Conspiracy Claim" is Still Protected by the Absolute Privilege Doctrine*

Should this court decide to exercise jurisdiction over the Tippin Defendants, Plaintiff's claims against them should be dismissed for failure to state a claim. In their original Memorandum in Support of their Motion to Dismiss, Defendants Keith Cutler and

James W. Tippin & Associates set forth the prevailing and uncontroverted case law of Minnesota and of the Eighth Circuit that a defamation claim is a defamation claim, and a plaintiff may not skirt around litigation immunity by attempting to recharacterize a defamation claim as something else. *See Guzhagin v. State Farm Mut. Auto Ins. Co.*, 566 F.Supp.2d 962 (D.Minn. 2008); *Issaenko v. Univ. of Minnesota*, No. 13-CV-3605 (JRT/SER), 2016 U.S. Dist. LEXIS 44838 (D.Minn. Jan. 25, 2016). Defendants will not re-state all of those arguments here. As the Fourth Circuit explained in a decision affirmed by the Supreme Court: "[R]egardless of the specific tort being employed, the First Amendment applies when a plaintiff seeks damages for reputational, mental, or emotional injury allegedly resulting from the defendant's speech." *Snyder v. Phelps*, 580 F.3d 206 (4th Cir. 2009), *aff'd*, 131 S. Ct. 1207 (2011).[2]

Moreover, in 2007, the Minnesota Supreme Court specifically rejected an attempt, similar to Plaintiff's, to disguise a defamation claim as a "civil conspiracy." In *Mahoney*

---

[2] *See also Snyder*, 131 S. Ct. at 1211 ("The Free Speech clause of the First Amendment . . . can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress."); *Hustler Magazine v. Falwell*, 485 U.S. 46, 56-57 (1988) (noting that when the First Amendment protects speech for libel purposes, it generally insulates that speech from an IIED claim); *Bose Corp. v. Consumers Union*, 466 U.S. 485 (1984) (similarly protecting against a product disparagement claim); *Time, Inc. v. Hill*, 385 U.S. 374 (1967) (same, invasion of privacy); *Beverly Hills Foodland, Inc. v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (same, tortious interference); *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188 1192-93 & n.2-3 (9th Cir. 1989) (same, IIED and false light); *Glenn v. Daddy Rocks, Inc.*, 171 F. Supp. 2d 943, 949 (D. Minn. 2001) (same, tortious interference); *Moldea v. New York Times Co.*, 793 F. Supp. 338 (D.D.C. 1992), *aff'd*, 22 F.3d 310 (D.C. Cir. 1994) (same, false light invasion of privacy, breach of contract, promissory estoppel, negligent misrepresentation, and interference with prospective business relations); *Dairy Stores, Inc. v. Sentinel Pub'g Co.*, 191 N.J. Super. 202, 217 (Law Div. 1983), *aff'd*, 198 N.J. Super. 19 (App. Div. 1985) ("[A] party who claims that its reputation has been damaged by a false statement cannot circumvent the strictures of the law of defamation . . . by labeling its action as one for negligence.").

*& Hagberg v. Newgard*, 729 N.W.2d 302 (Minn. 2007), the Minnesota Supreme Court explained:

> Although appellant frames its claims as breach of confidences, invasion of privacy, and civil conspiracy, the basis of appellant's complaint is that Newgard made false statements when she knew that those statements would harm the firm. ***Regardless of the label, appellant's claims are in essence defamation claims***; they are claims that arise as a consequence of Newgard's purported defamatory statements. ***Since we determine that appellant's claims for*** breach of confidences, invasion of privacy, ***and civil conspiracy sound in defamation***, we need not reach the question of whether absolute privilege applies to claims not sounding in defamation, and we find that absolute privilege operates to bar all of the claims at issue on this appeal.

*Id.* at 310 (emphasis added). Plaintiff's attempts to create this illusion of a grand scheme and massive conspiracy, somehow keenly calculated to opportunistically take advantage of a potentially lucrative probate estate, nevertheless fails to state a claim as a matter of Minnesota law. Plaintiff's claim against the Tippin Defendants is nothing more than a defamation claim. And based on Minnesota law, said Defendants are entitled to immunity under the absolute privilege doctrine.

***Absolute Immunity Applies to Various Actors in the Judicial Process, Not Just to Attorneys Representing Clients***

Lastly, Plaintiff asserts that the Tippin Defendants are not entitled to absolute immunity because they were not actually representing Alfred Jackson at the time the Missouri Complaint was filed. Plaintiff maintains that Alfred Jackson terminated the legal services of the WWB Defendants prior to the filing of the Missouri Complaint; thus, according to Plaintiff, any statements contained in the Complaint are not protected by the

absolute privilege doctrine because the statements were not made in the context of Defendants' representation of a client.

The Tippin Defendants strongly disagree with the allegations contained in the Complaint that they and the WWB Defendants were not representing Alfred Jackson at the time the Missouri Complaint was filed. As set forth in the WWB Defendants' Reply Memorandum (ECF No. 32), the WWB Defendants represented Alfred Jackson from November 2, 2018 to February 7, 2019. The Tippin Defendants were initially contacted by the WWB Defendants to serve as Local Counsel in Alfred Jackson's Missouri lawsuit on January 18, 2019. This was well within the time frame during which the WWB Defendants were representing Alfred Jackson. *(See Affidavit of Defendant Keith Cutler being filed contemporaneously herewith and incorporated herein by reference.)* Accordingly, Plaintiff's efforts to create a factual dispute in an attempt to expand the life of this meritless lawsuit are unavailing.

But even accepting Plaintiff's allegations as true for purposes of this Motion to Dismiss, Plaintiff's argument is based on a misunderstanding of the scope, purpose, and parameters of the absolute privilege doctrine. The absolute litigation privilege applies whether or not the WWB Defendants and/or the Tippin Defendants were actually representing Alfred Jackson in the Missouri lawsuit. The purpose of the absolute privilege doctrine is to "encourage witnesses to engage in open dialogue without the fear of facing civil liability for their acts." *Newgard*, 729 N.W.2d at 308. For that reason, the privilege "extends to the protection of the judge, the jury, the party or parties, counsel, and witnesses." *Matthis v. Kennedy*, 243 Minn. 219, 224 (1954). In *Mahoney,* a law firm

secretary was protected from liability by the absolute privilege doctrine for statements she made in an affidavit during the course of a lawsuit. In *Carpenter v. Extendicare Health Services*, No. 15-120 (MJD/JJK), 2015 WL 7729406 (D. Minn. Oct. 26, 2015), a nursing home was shielded from liability for defamation by the absolute privilege doctrine when it provided unfavorable information from a criminal defendant's records in response to a court order. In *Does v. Regents of the University of Minnesota*, No. 18-1596 (DWF/HB), 2019 WL 2601801 (D. Minn. June 25, 2019), certain student-athletes sued the University and its President for, *inter alia*, defamation for public statements by the President that falsely portrayed the student-athletes as guilty of sexual misconduct. This Court held that the President was protected by absolute privilege because, as University President, he was "commenting as a senior university official about a matter of significant public concern." *Does*, 2019 WL 2601801 at *9.

As illustrated above, the application of the absolute privilege doctrine is not limited to attorneys who are representing clients. The doctrine applies in any context where it serves the public interest for the speaker to be able to speak freely, without fear of reprisal by way of civil liability. Civil lawsuits have long been recognized as falling into that category, and application of the doctrine is most prevalent in litigation scenarios. The doctrine was designed to protect persons, including attorneys, from lawsuits just like this one, and it is in situations just like this where the doctrine serves its greatest purpose. Accordingly, the absolute privilege doctrine shields the Tippin Defendants from Plaintiff's defamation claims, and those claims should be dismissed.

## CONCLUSION

Plaintiff's arguments fail to overcome three major impediments to establishing this Court's jurisdiction over the Tippin Defendants. First, Plaintiff mistakenly relies on other persons' contacts with Minnesota rather than the Tippin Defendants' own contacts (or lack thereof) in contravention to well-settled legal precedent. Second, Plaintiff argues that the effects of the Missouri lawsuit were harmful to him as a Minnesota resident, despite Minnesota and Eighth Circuit case law holding that mere effects of a defendant's conduct on a plaintiff, on their own, are insufficient to confer personal jurisdiction on the defendant. Third, Plaintiff attempts to "back door" jurisdiction by claiming that the Tippin Defendants were part of a conspiracy to gain some financial advantage with respect to the Prince estate. However, the only conspiracy allegations in Plaintiff's Complaint specifically against the Tippin Defendants are those found in Count 8, which alleges only a conspiracy to defame Plaintiff. Inasmuch as no overt acts of that alleged conspiracy to defame Plaintiff occurred in Minnesota, participation in that alleged conspiracy is insufficient under Minnesota law to subject the Tippin Defendants to the jurisdiction of this Court. Because Plaintiff has failed to establish that this Court has personal jurisdiction over the Tippin Defendants, the claims against Defendants Keith Cutler and James W Tippin & Associates should be dismissed for lack of personal jurisdiction.

Alternatively, the Tippin Defendants are entitled to absolute immunity for the actions underlying Plaintiff's claims against them. Both the Eighth Circuit and Minnesota District Courts have ruled that allegedly defamatory statements made in the context of the judicial process fall within the protection of the absolute privilege doctrine. As a matter of law, Plaintiff's Complaint fails to state a claim against Defendants Keith Cutler and James

W. Tippin & Associates upon which relief can be granted, and their Motion to Dismiss on that ground should be granted with prejudice.

Based on the foregoing, as well as their original Memorandum in Support of their Motion to Dismiss, Defendants Keith Cutler and James W. Tippin & Associates pray that the claims against them contained in Counts 3, 8, and 9 of Plaintiff's Complaint be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). In the alternative, Defendants Keith Cutler and James W. Tippin & Associates pray that the claims against them contained in Counts 3, 8, and 9 of Plaintiff's Complaint be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: November 11, 2020

s/ Keith A. Cutler
KEITH A. CUTLER MO #36370
P.O Box 22807
Kansas City, Missouri 64113-2807
(816) 471-8575
(816) 421-0243 - FAX
kcutler@tippinlawfirm.com

s/ Robin M. Wolpert
ROBIN M. WOLPERT MN #0310219
CHRISTOPHER PROCZKO MN #0392419
120 South 6th Street, Suite 100
Minneapolis, Minnesota 55402
(612) 756-7100
(612) 756-7101 - FAX
robinw@sapientialaw.com
christopherp@sapientialaw.com

ATTORNEYS FOR DEFENDANTS CUTLER AND JAMES W. TIPPIN & ASSOCIATES