SOUTH SEVENTH STREET
SUITE 1110,
MINNEAPOLIS, MN 55402
P: (612) 805-4619
F: (888) 588-1434

THE HUTTON FIRM

LEE A. HUTTON, III, ESQ.
LHUTTON@THEHUTTONFIRM.COM

ADMITTED IN STATE COURT OF MINN., U.S. CT. D. MINN., STATE COURT OF NEW YORK, & UNITED STATES SUPREME COURT

January 26, 2022

Gregory Simpson
Meaher & Geer, LLP
33 South Sixth Street
Minneapolis, Minnesota 55402

Re: Bruntjen v. Van Excel et. al., Case No. 20-CV-01832-MJD-HB

Dear Counsel:

Please find Justin Bruntjen's supplemental responses.

**RESPONSES TO INTERROGATORY**

**Supplemental Response to Interrogatory No.3:** Plaintiff believes that Raffles Van Exel convinced Alfred Jackson to fire him so that he can refer the client to WWB Defendants. In the motions and responses, WWB Defendants and local counsel admit that there were discussed with Raffles Van Excel. Interestingly, Plaintiff find important to note that WWB attorneys frequently met with Raffels Van Excel despite his public admission that he is a fraudster. See Complaint. WWB accepted the referral.

The referral and further counsel from Raffles Van Excel led to the false information presented in the Missouri complaint. Raffles assisted WWB in claiming that Alfred Jackson was not being properly assisted by Plaintiff, that Plaintiff stole money, and WWB defendants created the strategy with Raffles to file the Complaint. WWB will have to explain why they failed to conduct their due diligence. The truth is that they conjured up a story to dismiss Plaintiff from any award or proceeds. They also did so in an out of state jurisdiction making strategically making it difficult for Plaintiff to defend.

Obviously, Plaintiff is aware of certain events described above. Next, the WWB defendants are aware of their misdeeds and their advisors whom they told. Raffles is aware of the conspiracy including taking Alfred Jackson, manipulating his understanding of the money he was to receive from the loan, that both WWB Defendants and Raffles conspired tell Alfred Jackson that Plaintiff stole his money. Ultimately, WWB Defendants and Raffles failed to inform the court and everyone that they were no longer the attorney for Alfred Jackson at the time they filed the malicious and knowingly fictitious lawsuit.



EXHIBIT B

**Supplemental Response to Interrogatory No. 5:**

2011-2012 – Plaintiff made $14-$15 dollars an hour working less than 40 hours per week. The gross yearly pay can be calculated to be $24,000 to $26,000.

**Interrogatory No. 8 and 9:** Plaintiff continues to attempt to calculate the damages resulted in the Missouri lawsuit. You should refer to the case law and discussion related to the defamation calculation of damages. However, Plaintiff continues to identify every time that someone mentions the article alleges that he stole money from a client. Plaintiff has had to explain to attorneys that fail to refer cases to him, address the possibility of working for a firm like Meagher & Geer resulting from a simple email search of the article. Plaintiff fears that his opportunities have diminished.

Plaintiff states that that he will be seeking damages resulting from defamation claims resulting from per se violations. Plaintiff will also move for punitive damages, attorneys' fees, and request that Defendants pay for the removal of the false information or request a liquidated damage resulting from every located website that has republished the false information.

**Interrogatory No. 11**: See Attached to email. Please note that these documents were in the previously provided discovery request. Similarly, this case mirrors the Cardi B case where she received $4,000,000 dollars for false statements made by a Youtuber. Defendants can refer to court documents about the case. In the case, Cardi and her legal team alleged that Youtuber used her YouTube channel to "spread malicious rumors, slanderous assertions, and false information about celebrities" for financial gain. The WWB Defendants' actions are similar.

The WWB Defendants took upon a malicious campaign to damage and destroy Plaintiff. WWB "knew these statements to be false" but "acted with reckless disregard of whether they were true or not" and published them. As a result, Plaintiff has been embarrassed, humiliated, received mental anguish, and received emotional distress. Plaintiff believes that the number is still being calculated and determined by the jury. Plaintiff is seeking damages as well as an order for WWB to remove in full all defamatory and disparaging statements. Plaintiff believes that the damages are near $1,000,000.

## RESPONSES TO PRODUCTION OF DOCUMENTS

You have received the retainer/engagement letters in the original production, but as a precaution the documents have been provided to you again. The tax return documents are being gathered.

Sincerely,

*/s/ Lee A. Hutton, III*

Lee A. Hutton, III
LAH/me

Cc: client